UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
TRUSTEES OF THE NORTHEAST CARPENTERS
 HEALTH, PENSION, ANNUITY, APPRENTICESHIP,
and LABOR MANAGEMENT COOPERATION FUNDS,

                        Petitioners,

         -against-

TIKI INDUSTRIES, INC.,

                       Respondent.
------------------------------------------------------------------------X

FILED
CLERK
5:13 pm, Jan 25, 2021
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**OPINION & ORDER**

19-CV-3295 (SJF)(ARL)

FEUERSTEIN, J.

      Pending before the Court is the unanswered petition of Trustees of the Northeast Carpenters Health, Pension, Annuity, Apprenticeship, and Labor Management Cooperation Funds ("petitioners") to confirm and enforce an arbitration award rendered pursuant to a collective bargaining agreement ("CBA") between the New England Regional Council of Carpenters (the "Union") and respondent Tiki Industries, Inc. ("respondent") under Section 502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(3); Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185; and Section 9 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 9. By order dated September 17, 2019, petitioners' application to deem the unanswered petition as an unopposed motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure was granted. For the reasons set forth below, petitioners are granted judgment as a matter of law on their petition in its entirety.

1

I. Background

    A.    Factual Background

Petitioners Trustees of the Northeast Carpenters Health, Pension, Annuity, and Apprenticeship Funds, successors to the Empire State Carpenters Annuity, Apprenticeship, Pension, and Welfare Funds (the "ERISA Funds"), are employer and employee trustees of multiemployer labor-management trust funds organized and operated in accordance with ERISA. (Petition ["Pet."], ¶ 4). Petitioners Trustees of the Northeast Carpenters Labor Management Cooperation Fund, successor to the Empire State Carpenters Labor Management Cooperation Fund (the "Labor Management Fund"), are employer and employee trustees of a labor management cooperation committee established under section 302(c)(9) of the LMRA, 29 U.S.C. § 186(d)(9). (*Id.*, ¶ 5).

At all relevant times, respondent was an employer within the meaning of section 3(5) of ERISA, 29 U.S.C. § 1002(5), and was an employer in an industry affecting commerce within the meaning of section 501 of the LMRA, 29 U.S.C. § 142. (Pet., ¶ 6).

In or about January 2013, respondent entered into a short form agreement with the Union (the "SFA"), pursuant to which it agreed to be bound by every applicable current collective bargaining agreement between the Union and the members of the contractor associations, "governing wages, working conditions and payments to fringe benefit funds applicable to the construction site location where the work is being performed." (Pet., ¶¶ 7-8, Ex. A). The SFA further provides, *inter alia*, that it shall continue in effect for the duration of the applicable collective bargaining agreements and "shall continue in full force and effect from year to year unless at least ninety 90 days before expiration of the then current collective bargaining agreement either party notifies the other in writing by certified mail, return receipt requested, of

cancellation" of the SFA. (*Id.*, ¶ 9, Ex. A). Petitioners assert, upon information and belief, that neither respondent nor the Union provided notice to terminate the SFA and that respondent, thus, remains bound by the SFA. (*Id.*, ¶ 10).

Pursuant to the SFA, respondent has been bound to the following CBAs with the Union (collectively, the "CBAs"): a Southeast Region Agreement covering the period from July 1, 2011 through May 31, 2016 (the "2011-2016 CBA"); and a Southeast Region Agreement covering the period from July 1, 2016 through April 30, 2019 (the "2016-2019 CBA"). (Pet., ¶ 11, Ex. B and C). The CBAs require, *inter alia*, respondent "to make contributions to the Funds for all work within the trade and geographical jurisdiction of the Union." (*Id.*, ¶ 12; *see also Id.*, Ex. B at 8, Art. 16, and Ex. C at 11, Art. 16). In addition, the CBAs provide, in pertinent part, that "[t]he Employer [respondent] shall be bound by and shall comply with the agreements, declarations of trust, plans and/or regulations of the fringe benefit funds, and the labor management cooperation committees, so designated." (*Id.*, Ex. B at 8, Art. 16, Section (a); *Id.*, Ex. C at 11, Art. 16, Section (a)).

Petitioners established a joint "Employer Contribution Audit and Collection Policy" (the "Collection Policy"), (Pet., ¶ 13 and Ex. D), pursuant to which, *inter alia*, "[i]f an employer fails to submit remittance reports, weekly payroll reports, or other reports of work for which contributions to the Funds are required, such that the Funds cannot determine the amount owed by the employer for a given month, then . . . the [Funds] will compute the estimated amount of contributions due by assuming that the hours for which the employer is obligated to contribute for each week in the unreported month equal the highest number of average hours for which the employer was obligated to contribute in a week for any four consecutive weeks within the 36 months immediately preceding the unreported month." (*Id.*, Ex. D at 6, Art. II, § 3.2). Pursuant

3

to the Collection Policy: (a) interest on delinquent contributions is to "be calculated at the minimum rate of .75% per month," (*id.*, Ex. D at 3, Art., III, § 2.1(D)); (b) liquidated damages "shall be calculated from the Due Date, . . . shall become due and owing if suit is commenced and/or arbitration is demanded[,] . . . [and] shall be 20% of the delinquent Contributions[,]" (*id.*, Ex. D at 13, Art. VI, § 6.1); and (c) the employer, *i.e.*, respondent, shall be liable for all costs incurred in collecting delinquent contributions, including, but not limited to, audit costs as provided therein and arbitration fees. (*Id.*, Ex. D at 13, Art. VI, § 6.3; see also *Id.*, Ex. D at 9. Art. IV, § 4.6).

Petitioners allege that respondent failed to remit all contributions owed to the Funds for the period November 2018 through January 2019 and that, pursuant to the Collection Policy, respondent owes an estimated principal deficiency of thirty-one thousand six hundred sixty-four dollars and fifty-two cents ($31,664.52) for the period November 30, 2018 through January 31, 2019. (Pet., ¶¶ 17-18). "The Collection Policy provides that, in the event an employer fails to remit contributions to the Funds, the matter shall be sent to arbitration before the Funds-designated arbitrator." (Pet., ¶ 19; *see also Id.*, Ex. D at 4, Art. II, § 2.3). Pursuant thereto, petitioners initiated arbitration before the designated arbitrator, J.J. Pierson, (*id.*, ¶ 21), and sent a "Notice of Intent to Arbitrate Fund Delinquency," dated February 6, 2019, to respondent via certified mail. (*Id.*, ¶ 21 and Ex. E).

Following a hearing, at which respondent failed to appear, the arbitrator rendered an arbitration award ("the Award"), a copy of which was delivered to respondent. (Pet., ¶ 22 and Ex. F). The arbitrator found that respondent "is delinquent in payment of fringe benefit contributions to the Funds, in violation of its obligations under the Agreement for the payroll periods of November 30, 2018 through January 31, 2019" and ordered, *inter alia*, respondent to

4

pay the Funds the total amount of thirty-seven thousand seven hundred seventy-four dollars and fifty-four cents ($37,774.54), including "delinquencies in contributions" in the amount of thirty-one thousand six hundred sixty-four dollars and fifty-two cents ($31,664.52); interest in the amount of two hundred thirty-eight dollars and eight cents ($238.08); liquidated damages in the amount of four thousand two hundred twenty-one dollars and ninety-four cents ($4,221.94); attorney's fees in the amount of nine hundred dollars ($900.00); and the arbitrator's fee in the amount of seven hundred fifty dollars ($750.00). (*Id.*, Ex. F). In addition, the Award provides, in relevant part, that "[i]n the event it is necessary for [petitioners] to enforce this [Award] in court, the Employer [respondent] shall be responsible for all court costs including, but not limited to, the filing fee of $400.00." (*Id.*)

According to petitioners, respondent "has failed to abide by the Award[,]" (Pet., ¶ 24), and "[t]he Award has not been vacated or modified and no application for such relief is currently pending." (*Id.*, ¶ 25).

B.     Procedural History

On June 3, 2019, petitioners commenced this proceeding pursuant to Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3); Section 301 of the LMRA, 29 U.S.C. § 185; and Section 9 of the FAA, 9 U.S.C. § 9, seeking to confirm the Award and to have judgment entered in their favor (i) in the amount of thirty-seven thousand seven hundred seventy-four dollars and fifty-four cents ($37,774.54) pursuant to the Award, plus interest from the date of the Award through the date of judgment; and (ii) in the amount of one thousand seven hundred thirty dollars ($1,730.00) for attorney's fees and costs incurred in commencing this proceeding, pursuant to the Award and Section 502(g) of ERISA, 29 U.S.C. § 1132(g).

5

By order dated September 17, 2019, this Court granted petitioners' application to deem the unanswered petition as an unopposed motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 109 (2d Cir. 2006) (holding that where a petition to confirm or vacate an arbitration award is accompanied by a record, such as an agreement to arbitrate and the arbitration award itself, "[a] default judgment [is] inappropriate . . . [and] the petition and accompanying record should . . . be[] treated as akin to a motion for summary judgment based on the movant's submissions.")

II. Discussion[1]

    A.    Standard of Review

"Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *ING Bank N.V. v. M/V TEMARA, IMO No. 9333929*, 892 F.3d 511, 518 (2d Cir. 2018) (quoting Fed. R. Civ. P. 56(a)); *accord Jaffer v. Hirji*, 887 F.3d 111, 114 (2d Cir. 2018). In ruling on a summary judgment motion, the district court must first "determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007); *see also Ricci v. DeStefano*, 557 U.S. 557, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490 (2009) ("On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party *only* if there is a 'genuine' dispute as to those facts." (emphasis added)). "A fact is material if it might affect the outcome of the suit under the governing law." *Baldwin v. EMI Feist Catalog, Inc.*, 805 F.3d 18, 25 (2d Cir. 2015).

---

[1] Unless otherwise noted, case quotations omit all internal quotation marks, citations, footnotes, and alterations.

In reviewing the record to determine whether there is a genuine issue for trial, the court must "construe the evidence in the light most favorable to the non-moving party," *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 109 (2d Cir. 2017), and "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." *Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 45 (2d Cir. 2019); *see also Hancock v. County of Rensselaer*, 882 F.3d 58, 64 (2d Cir. 2018) ("In determining whether there is a genuine dispute as to a material fact, we must resolve all ambiguities and draw all inferences against the moving party.") "A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pollard v. New York Methodist Hosp.*, 861 F.3d 374, 378 (2d Cir. 2017); *accord Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113-14 (2d Cir. 2017). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci*, 557 U.S. at 586, 129 S. Ct. at 2677; *accord Baez v. JetBlue Airways Corp.*, 793 F.3d 269, 274 (2d Cir. 2015).

"The moving party bears the initial burden of showing that there is no genuine dispute as to a material fact." *CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013); *accord Jaffer*, 887 F.3d at 114. "[W]hen the moving party has carried its burden[,] … its opponent must do more than simply show that there is some metaphysical doubt as to the material facts," *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007), and must offer "some hard evidence showing that its version of the events is not wholly fanciful[.]" *Miner v. Clinton County, N.Y.*, 541 F.3d 464, 471 (2d Cir. 2008). The nonmoving party can only defeat summary judgment "by adduc[ing] evidence on which the jury could reasonably find for that party." *Lyons v. Lancer Ins. Co.*, 681 F.3d 50, 56 (2d Cir. 2012). "The

mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient to defeat a summary judgment motion[,]" *Fabrikant v. French*, 691 F.3d 193, 205 (2d Cir. 2012); and "[a] court cannot credit a plaintiff's merely speculative or conclusory assertions." *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012); *see also Federal Trade Comm'n v. Moses*, 913 F.3d 297, 305 (2d Cir. 2019) ("[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."); *Flores v. United States*, 885 F.3d 119, 122 (2d Cir. 2018) ("While we are required to resolve all ambiguities and draw all permissible factual inferences in favor of the non-moving party, . . . conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment"). Since "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party[,] . . . [i]f the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

"[W]here the non-moving party chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also Jackson v. Federal Express*, 766 F.3d 189, 194 (2d Cir. 2014) (holding that a failure to respond to a motion for summary judgment "does not risk a default judgment . . . . Rule 56 [of the Federal Rules of Civil Procedure] does not allow district courts to automatically grant summary judgment on a claim simply because the summary judgment motion . . . is unopposed.") "An unopposed summary judgment motion may also fail where the undisputed facts fail to show that the moving party is entitled to judgment as a matter

8

of law." *Vermont Teddy Bear*, 373 F.3d at 244; *see also D.H. Blair*, 462 F.3d at 110 ("Even unopposed motions for summary judgment must fail where the undisputed facts fail to show that the moving party is entitled to judgment as a matter of law."). Thus, "in considering a motion for summary judgment, [the court] must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law." *Vermont Teddy Bear*, 373 F.3d at 246.

   B.  Review of Arbitration Award

"A court's review of an arbitration award is . . . severely limited so as not to frustrate the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *United Bhd. of Carpenters & Joiners of Am. v. Tappan Zee Constructors, LLC*, 804 F.3d 270, 274-75 (2d Cir. 2015); *see also A&A Maint. Enter., Inc. v. Ramnarain*, 982 F.3d 864, 868 (2d Cir. 2020) ("A federal court's review of labor arbitration awards is narrowly circumscribed and highly deferential-- indeed, among the most deferential in the law."); *Landau v. Eisenberg*, 922 F.3d 495, 498 (2d Cir. 2019) ("The FAA creates a strong presumption in favor of enforcing arbitration awards and courts have an extremely limited role in reviewing such awards.") "A court is not authorized to review the arbitrator's decision on the merits; its role is simply to determine whether the arbitrator acted within the scope of his authority as defined by the collective bargaining agreement." *New York City & Vicinity Dist. Council of United Bhd. of Carpenters & Joiners of Am. v. Ass'n of Wall-Ceiling & Carpentry Indus. of N.Y., Inc. ("Wall-Ceiling")*, 826 F.3d 611, 618 (2d Cir. 2016); *accord ABM Indus. Grps., LLC v. Int'l Union of Operating Eng'rs, Local 30, 30A, 30B, AFL-CIO*, 968 F.3d 158, 161 (2d Cir. 2020). "Thus, as long as the arbitrator was even arguably construing or applying the contract and acting within the

scope of his authority and did not ignore the plain language of the contract, the award should ordinarily be confirmed." *Wall-Ceiling*, 826 F.3d at 618; *see also Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d 527, 537 (2d Cir. 2016) ("As long as the award draws its essence from the collective bargaining agreement and is not merely the arbitrator's own brand of industrial justice, it must be confirmed."); *Rich v. Spartis*, 516 F.3d 75, 81 ("[A]n arbitration award should be enforced, despite a court's disagreement with it on the merits, if there is a barely colorable justification for the outcome reached.").

"Normally, confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *D.H. Blair*, 462 F.3d at 110; *accord Citigroup, Inc. v. Abu Dhabi Inv. Auth.*, 776 F.3d 126, 132 (2d Cir. 2015). "[T]he court 'must grant' the award 'unless the award is vacated, modified, or corrected.'" *D.H. Blair*, 462 F.3d at 110 (quoting 9 U.S.C. § 9).

Petitioners have demonstrated that the arbitrator acted within the scope of his authority in issuing the Award; that the Award draws its essence from the CBA; and that the Award has not been vacated, modified or corrected. Accordingly, petitioners have established their entitlement to judgment as a matter of law on their petition to confirm and enforce the Award.

C. Prejudgment Interest

Since, *inter alia*, the Collection Policy provides that interest on delinquent contributions is to be calculated at the rate of 0.75% per month, and petitioners expressly requested such amount in their petition, petitioners are granted an award of prejudgment interest at the rate of 0.75% per month from the date of the Award to the date of judgment.[2] *See, e.g. Trs. of the Ne.*

---

[2] The Award attached to the petition is undated. However, according to the petition, the Award was issued on March 21, 2019. (Pet., ¶ 22).

10

*Carpenters Health v. ITO Installations, Ltd.*, No. 16-cv-4558, 2017 WL 564749, at * 5 (E.D.N.Y. Jan. 25, 2017), *report and recommendation adopted*, 2017 WL 563982 (E.D.N.Y. Feb. 10, 2017); *Trs. of Empire State Carpenters Annuity v. Bronx Base Builders, Ltd.*, No. 15-cv-2892, 2016 WL 1032812, at * 3 (E.D.N.Y. Mar. 15, 2016).

      D.      Attorney's Fees and Costs

           1.      Attorney's Fees

Petitioners also seek to recover attorney's fees in the amount of one thousand three hundred thirty dollars ($1,330.00), based upon: (a) an hourly rate of three hundred dollars ($300.00) for the two and one-tenth (2.1) hours of work performed by Nicole Marimon, Esq., a partner at Virginia & Ambinder, LLP ("V&A"); (b) an hourly rate of two hundred twenty-five dollars ($225.00) for the two and eight-tenths (2.8) hours of work performed by Adrianna Grancio, Esq.; an associate at V&A; and (c) an hourly rate of one hundred dollars ($100.00) for the seven-tenths (.7) of an hour of work performed by legal assistants at V&A. Ms. Marimon is a 2014 graduate of Fordham University School of Law and has prior experience litigating ERISA claims. (Pet., ¶ 29). Ms. Grancio is a 2016 graduate of St. John's University School of Law and "has handled the prosecution of several labor-law related actions." (*Id.*, ¶ 30).

Section 502(g)(2) of ERISA provides, in relevant part, that "[i]n any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan . . . (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, . . . ." 29 U.S.C. § 1132(g)(2). "[A]n award of attorney fees and costs is . . . mandatory under subsection (2), of section 1132(g)." *New York State Teamsters Conf. Pension & Ret. Fund v. Boening Bros., Inc.*, 92 F.3d

11

127, 135 (2d Cir. 1996); *see also Richardson v. Laws Constr. Corp.*, 557 F. App'x 57, 59 (2d Cir. Feb. 13, 2014) (summary order) ("When trustees prevail in an ERISA action for unpaid contributions, 29 U.S.C. § 1132(g)(2)(D) mandates an award of 'reasonable attorney's fees and costs of the action, to be paid by the defendant'"). "An action to confirm an arbitrator's award of such payments [to recover unpaid contributions to a benefit fund] is considered to be an action to recover unpaid contributions" within the meaning of 29 U.S.C. § 1132(g)(2). *Supreme Oil Co., Inc. v. Abondolo*, 568 F. Supp. 2d 401, 409 (S.D.N.Y. 2008); *cf. Odeon Cap. Grp. LLC v. Ackerman*, 864 F.3d 191, 199 (2d Cir. 2017). In any event, attorney's fees and costs may properly be awarded where, *inter alia*, a party refuses to abide by an arbitrator's award without justification or an employer who fails to make timely contributions to ERISA funds is contractually obligated to pay attorney's fees and costs incurred in recovering the delinquent contributions. *See, e.g. Trs. of Empire State Carpenters Annuity v. Fourmen Constr., Inc.*, No. 15-cv-3252, 2016 WL 146245, at * 3 (E.D.N.Y. Jan. 13, 2016) (citing cases). Accordingly, petitioners are entitled to recover their reasonable attorney's fees and costs incurred in enforcing the Award.

"In calculating attorney's fees, the district court must first determine the lodestar-- the product of a reasonable hourly rate and the reasonable number of hours required by the case-- which creates a presumptively reasonable fee." *Stanczyk v. City of New York*, 752 F.3d 273, 284 (2d Cir. 2014); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983) ("The most useful starting point for determining the amount of a reasonable [attorney's] fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.") The burden is on the fee applicant to submit evidence to support the number of hours expended and the rates claimed. *Hensley*, 461 U.S. at 437, 103 S. Ct. 1933.

a. Reasonable Hourly Rate

"[A] presumptively reasonable [attorney's] fee boils down to what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (quotations and citation omitted); *accord Bergerson v. New York State Office of Mental Health, Cent. N.Y. Psychiatric Ctr.*, 652 F.3d 277, 289-90 (2d Cir. 2011). Under the "forum rule" applicable in this Circuit, "courts should generally use the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee." *Restivo v. Hessemann*, 846 F.3d 547, 590 (2d Cir. 2017); *see also Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551, 130 S. Ct. 1662, 176 L. Ed. 2d 494 (2010) ("[T]he lodestar looks to the prevailing market rates in the relevant community.") Thus, in determining a reasonable hourly rate, the court should consider the prevailing rates of lawyers with comparable skill, experience and reputation in the district in which the action was commenced and litigated. *See Reiter v. MTA New York City Transit Auth.*, 457 F.3d 224, 232 (2d Cir. 2006); *McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006). Rates should be "current rather than historic hourly rates." *Reiter*, 457 F.3d at 232

The hourly rates billed by V&A are commensurate with current prevailing hourly rates for attorneys with comparable skill, experience and reputation as Ms. Marimon and Ms. Grancio practicing in the Eastern District of New York, as well as for their legal assistants. *See, e.g. CIT Bank, N.A. v. Mitchell*, No. 17-CV-1969, 2021 WL 54081, at *6 (E.D.N.Y. Jan. 6 2021) ("Hourly rates in the Eastern District of New York generally range from $300.00 to $450.00 for partners, $200.00 to $325.00 for senior associates, $100.00 to $200.00 for junior associates and $85.00 to $100.00 for paralegals."); *Trs. of Local 7 Tile Indus. Welfare Fund v. AM Tile*

13

*Specialty Constr.*, No. 19-CV-1809-RPK-SJB, 2020 WL 7034025, at *12 (E.D.N.Y. Sept. 23 2020), *report and recommendation adopted*, 2020 WL 7021646 (E.D.N.Y. Nov. 30, 2020) ("In ERISA matters, courts in the Eastern District of New York have approved hourly rates for partners from $200 to $450 per hour, . . . rates ranging from $200 to $300 for senior associates, and $100 to $200 for junior associates, . . . and rates ranging from $70 to $90 per hour for paralegals and legal assistants. . . . However, courts have accounted for the relative simplicity of ERISA default cases by consistently approving rates that are closer to the lower end of this range.") Accordingly, the hourly rates at which V&A billed for Ms. Marimon, Ms. Grancio and the legal assistants are reasonable.

                b.        Hours Reasonably Expended

The hours expended by Ms. Marimon, Ms. Grancio and the legal assistants in this action, *i.e.*, a total of five and six-tenths (5.6) hours, is also reasonable. *See, e.g. Trs. of Ne. Carpenters Health, Pension, Annuity, Apprenticeship, & Labor Mgmt. Coop. Funds v. Excel Installations, LLC*, No. 19-CV-3012, 2020 WL 429135, at *5 (E.D.N.Y. Jan. 27, 2020) (finding that the five and nine-tenth (5.9) hours billed in a motion to confirm an ERISA arbitration award was reasonable); *ITO Installations*, 2017 WL 564749, at * 4 (finding that five and one-tenth (5.1) hours billed in an action to confirm an arbitrator's award was reasonable). Accordingly, petitioners are granted judgment as a matter of law awarding them attorney's fees in this action in the total amount of one thousand three hundred thirty dollars ($1,330.00).

      2.      Costs

Petitioners also seek to recover costs in the total amount of four hundred dollars ($400.00) for the Court's filing fee. (Pet., ¶ 34). Since, *inter alia*, the Award expressly provides that "[i]n the event it is necessary for [petitioners] to enforce this [Award] in court, [respondent] shall be responsible for all court costs including, but not limited to, the filing fee of $400.00[,]" (Pet., Ex. F, ¶ 9), petitioners are granted judgment as a matter of law awarding them costs in the total amount of four hundred dollars ($400.00).

III.      Conclusion

For the reasons set forth above, petitioners are granted judgment as a matter of law on their petition in its entirety. The Clerk of the Court shall (1) enter judgment in favor of petitioners and against respondent (a) confirming the Award, and (b) awarding petitioners (i) the full amount of the Award, *i.e.*, thirty-seven thousand seven hundred seventy-four dollars and fifty-four cents ($37,774.54), plus prejudgment interest thereon at the rate of 0.75% per month from the date of the Award, *i.e.*, March 21, 2019, to the date of judgment; and (ii) attorney's fees and costs in the total amount of one thousand seven hundred thirty dollars ($1,730.00); and (2) close this case.

SO ORDERED.

                                                    /s/ *Sandra J. Feuerstein*
                                                    Sandra J. Feuerstein
                                                    United States District Judge

Dated: January 25, 2021
Central Islip, New York